IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:05-CR-00102-H
NO. 4:08-CV-00025-H

| | |
|---|---|
| REGINALD LAVERNE ROBERTS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **MEMORANDUM & RECOMMENDATION** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This matter is before the Court on Reginald Laverne Roberts's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Senior Judge Howard referred the matter to the undersigned to conduct an evidentiary hearing as to whether Petitioner timely instructed his attorney to file an appeal, and a hearing was held on January 25, 2011. Accordingly, this matter is now ripe for decision.

## STATEMENT OF THE CASE

Petitioner pled guilty, pursuant to a plea agreement, to conspiracy to possess with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841. On March 13, 2007, Petitioner was sentenced to a term of imprisonment of 78 months. On May 25, 2007, Petitioner filed a *pro se* notice of appeal, which the Court treated as a request for an extension of time to file an appeal. This request was denied on June 1, 2007. On January 17, 2008, the Petitioner filed a motion for retroactive application of sentencing guidelines as to crack cocaine offenses. On February 11, 2008, Petitioner filed a motion to vacate his current sentence under 28 U.S.C. § 2255, but asked that the motion be held in abeyance until the Court ruled on the sentence reduction motion. On September 29, 2008, the Court reduced Petitioner's sentence to 65 months, which he appealed. On

March 24, 2009, the Court of Appeals affirmed the Court's sentence reduction. On July 16, 2010, Petitioner was released from the custody of the Bureau of Prisons and began serving his term of 60 months supervised release.

**STATEMENT OF THE FACTS**

The Court held an evidentiary hearing on January 25, 2011, to determine whether Petitioner timely instructed his attorney to file an appeal. At the hearing, the Court heard testimony from Petitioner and James Ayers ("Ayers"), Petitioner's counsel at sentencing.

**A. Testimony of Petitioner**

Petitioner testified that prior to his sentencing he had entered into a plea agreement in which he agreed to be debriefed by the government and to waive certain appellate rights. He was represented by Ayers at his sentencing and was sentenced by Senior Judge Howard to 78 months incarceration. Petitioner recalled that his guideline calculation had been much higher than 78 months and that Ayers had argued for a reduction, which Senior Judge Howard granted. Petitioner had cooperated with law enforcement prior to his sentencing, but it had not resulted in a 5K reduction. Petitioner acknowledged that Senior Judge Howard told him he had appeal rights, but claimed that he did not fully understand what his rights were at that time, that Ayers did not explain his appeal rights, and that he believed his right to appeal ran from the date of sentencing. He also claimed to have questions about the length of his sentence and supervised release period.

Petitioner testified that he was expecting to receive a 60 month active sentence and no supervised release and that he wanted to discuss this with his attorney post-sentencing. On March 13, 2007, the same day Petitioner was sentenced, he wrote Ayers from the Edgecombe County Jail, but the letter did not mention filing an appeal and instead was about pursuing a Rule 35 motion.

2

Notwithstanding the fact that Ayers had previously explained Rule 35 to Petitioner, the Petitioner claimed he had a minimal understanding of how the process worked. He acknowledged that Ayers had explained to him that any appeal would negatively impact the opportunity to receive a Rule 35 reduction and that Ayers believed he had no basis for appeal. On March 21, 2007, Petitioner received a letter from Ayers recommending that he continue to pursue a Rule 35 motion. Petitioner also received copies of letters Ayers sent to law enforcement agencies regarding information Petitioner could provide to assist in investigations, including a letter dated March 28, 2007 to AUSA John Bennett specifically discussing Petitioner's attempt to qualify for a Rule 35 reduction. Petitioner recalled receiving these letters.

Petitioner was unsuccessful in reaching Ayers by telephone, so he asked a family member to call Ayers to let him know he was interested in filing an appeal. Petitioner claimed that he felt there was lack of interest from the government in the Rule 35 motion and that he was still interested in his appeal rights. Petitioner also claimed to have written to Ayers and to the Court regarding an appeal about a week after his sentencing, but admits there is no record of that letter. Petitioner recalled receiving a letter from Ayers acknowledging the March 27, 2007 call from his family regarding an appeal and expressing concern that this was a change from the Rule 35 strategy that Petitioner and Ayers had previously agreed upon. The letter further explained that the time to appeal had expired, but that Petitioner should contact Ayers immediately if he wanted to appeal and that Ayers would speak with him about the matter. Petitioner contends that he did not write or call Ayers again about an appeal because he believed the time to appeal had expired. However, Petitioner did recall a March 29, 2007 discussion with Ayers regarding the Rule 35 motion. He did not recall whether they discussed appeal.

Petitioner recalled sending Ayers letters in April 2007 containing information that might help him with a Rule 35 motion and that he and Ayers continued to exchange correspondence regarding Rule 35 opportunities. He did not know whether this information was ever used by law enforcement. Then, on May 25, 2007, Petitioner sent a letter to the Court inquiring about the notice of appeal he claimed to have sent to the Court on March 16, 2007. Petitioner acknowledged that his letter stated that he was properly advised that he had ten days to file a notice of appeal. He contended that Senior Judge Howard, and not Ayers, had explained that to him at sentencing, but he also admitted that he had received a letter from Ayers explaining that he had ten days to appeal. He further acknowledged that his letter to the Court stated that he had been unable to contact his court appointed counsel while at Edgecombe, but that he had claimed to have sent a letter to the Court and to Ayers during that time. Petitioner admitted receiving the Court's order construing his letter as a motion for extension of time to file a notice of appeal and denying that motion. Petitioner acknowledged that he did not contact Ayers or the Court in response to this order or in any way attempt to clarify that he had in fact mailed a timely notice of appeal to the Court on March 16, 2007.

**B. Testimony of James Ayers**

Ayers testified that he is an attorney licensed to practice in North Carolina and that he previously represented Petitioner. He advised Petitioner that it was in his best interest to pursue a Rule 35 motion and not an appeal because there were no real issues to appeal, he had signed an appeal waiver, and he had begun cooperating with law enforcement prior to sentencing. Ayers stated that he discussed a potential appeal with Petitioner before sentencing and at the sentencing, but had advised him to pursue Rule 35 motion instead. At Petitioner's March 13, 2007 sentencing,

4

Ayers made two notes, one that Petitioner was sentenced to 78 months and another that read "Rule 35," which was circled. Ayers testified that he advised Petitioner of his right to appeal.

Ayers testified that the phone call from Petitioner's family regarding his interest in appealing created concern because, in his experience, an appeal would most likely compromise any Rule 35 motion. Ayers recalled sending Petitioner a letter explaining his concerns and then having a discussion with him, either in person or by telephone, on March 29, 2007. Ayers's notes from that discussion reflect that he and Petitioner discussed cooperation, filing an appeal, filing an Anders brief, and the potential for an increase in his sentence. Ayers circled "Rule 35" and "cooperation" in his notes, indicating that Petitioner had decided to continue pursuit of the Rule 35 motion.

Ayers testified that Petitioner never asked him to file a notice of appeal and that he never received Petitioner's letters to the Court. He became aware of the May 25, 2007 letter to the Court when he received a copy of Senior Judge Howard's order. Ayers then contacted Petitioner and confirmed his prior decision to pursue a Rule 35 motion. Ayers testified that Petitioner never asked him to file an appeal and that if he had been asked to file an appeal he would have done so at any time.

## DISCUSSION

The only issue before the undersigned is to determine whether Petitioner timely instructed his attorney to file an appeal. Because this is a proceeding to vacate a judgment of conviction, the burden is on Petitioner to establish a denial of his constitutional rights by a preponderance of the evidence. *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938). The Court finds that Petitioner has not satisfied his burden.

Generally, analysis of an ineffective assistance of counsel claim requires application of the

5

two-part test established by *Strickland v. Washington*, 466 U.S. 668, 690-94 (1984).  First, the petitioner must show that his counsel's performance was deficient in that it fell below the standard of reasonably effective assistance.  *Id*. at 687-691.  Second, the petitioner must show that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different.  *Id*. at 694.  However, in *United States v. Peak*, the Fourth Circuit held that if a client instructs his attorney to file an appeal, and the attorney fails to do so, the attorney's actions constitute ineffective assistance, notwithstanding the likelihood of success on appeal.  992 F.2d 39, 42 (4th Cir. 1993).

**A.     Ayers Informed Petitioner of His Appeal Rights**

Petitioner testified that within ten days of his sentencing he wrote a letters to the Court and to Ayers expressing his desire to file a notice of appeal.  However, there is no record of these letters with the Court or in Ayers's file.  Furthermore, the letters from Petitioner to Ayers that are of record make no mention of filing a notice of appeal.  On the same day that he was sentenced, Petitioner wrote Ayers regarding information that would be mutually beneficial to law enforcement and Petitioner.  He specifically asked Ayers to contact AUSA John Bennett "to find out if he was interested and if my assistance would benefit me."  Pet'r Ex 1, Roberts 2255 Aff Ex 000022.  He did not raise the issue of appeal in that letter despite his testimony that Senior Judge Howard had advised him that same day of his right to appeal.

On March 21, 2007, Ayers wrote to Petitioner advising him that he had ten days within which to appeal and reiterating his prior advice that Petitioner concentrate his efforts on a Rule 35 motion because Ayers saw no basis for appeal.  *Id*. at Roberts 2255 Aff Ex 000023.  Importantly, Ayers instructed Petitioner to contact him immediately if he desired to appeal.  *Id*.  This

6

correspondence belies Petitioner's testimony that Ayers did not advise him regarding his right to appeal. Accordingly, the Court finds that Ayers did advise Petitioner of his right to appeal.

**B.       Petitioner Did Not Direct Ayers to File an Appeal**

On March 28, 2007, Ayers wrote to Petitioner regarding the phone call he had received from Petitioner's family member about filing an appeal. *Id*. at Roberts 2255 Aff Ex 000028. Ayers reiterated his prior discussion with Petitioner regarding appeal, including the fact that he had executed an appeal waiver, and his decision to pursue the Rule 35 motion. *Id*. Ayers informed Petitioner that he had not filed a notice of appeal because he had not been instructed to do so, but that he should contact Ayers immediately if he had changed his mind with regard to filing an appeal. *Id*. Ayers concluded by stating that the time to appeal had expired, but that he would speak to Petitioner with regard to the matter. *Id*. Ayers's notes reflect that the following day, March 29, 2007, he discussed with Petitioner, either by phone or in person, Rule 35, cooperation, filing an appeal, filing an Anders brief, and the potential for an increase in his sentence. *Id*. at Roberts 2255 Aff Ex 000029. The Court finds these notes to be persuasive evidence that Ayers and Petitioner discussed whether he wanted to pursue an appeal, despite Petitioner's testimony that he could not recall discussing the appeal issue with Ayers. Furthermore, all future correspondence between Ayers and Petitioner is with regard to Rule 35, which further supports Ayers's testimony that Petitioner decided to pursue a Rule 35 motion and not an appeal. Finally, there is no correspondence in the record indicating that Petitioner directed Ayers to file an appeal, and Petitioner did not testify that he had asked Ayers to file an appeal. Accordingly the Court finds that Petitioner did not direct Ayers to file a notice of appeal.

**C.       Error in Calculating Time for Appeal was Not *Per Se* Ineffective Assistance**

7

Petitioner contends that it was *per se* ineffective assistance of counsel when Ayers incorrectly informed Petitioner that his time to appeal had run. Petitioner was sentenced on March 13, 2007, but the Judgment was not entered until March 27, 2007, and then was redocketed on March 30, 2007 to correct the case number. A notice of appeal must be filed within ten days after entry of the judgment. Fed. R. App. P. 4(b)(1). A judgment is considered entered when it is docketed. Fed. R. App. P. 4(b)(6). Therefore, at the earliest, Petitioner was required to file any notice of appeal no later than April 6, 2007. Ayers's March 28, 2007 letter to Petitioner stated that he "only had ten (10) days to appeal from sentencing" and that his time to appeal "would have expired over a week ago." Pet'r's Ex. 1, Roberts 2255 Aff Ex 000028.

Petitioner has cited no cases directly on point that support his contention, but argues that the circumstances equate to *per se* ineffectiveness such as when counsel is instructed to file an appeal and does not. The Court finds the comparison inapposite. In the present case, there is no evidence that Petitioner ever instructed his counsel to file an appeal. The Court finds that it is more appropriate to consider the facts and circumstances of the case, as the Supreme Court did in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), where the Court held that it was not *per se* ineffective assistance when counsel failed to file a notice of appeal without the defendant's consent. 528 U.S. at 480. The Supreme Court instead opted for a case-by-case inquiry, explaining that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known." *Id*. The Court went on to provide

further guidance as to the appropriate inquiry:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id*. Finally, the Supreme Court instructed that it is a "critical requirement that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." *Id*. at 484. In other words, a defendant must show that "but for counsel's deficient performance, he would have appealed" in order to be entitled to relief. *Id*. Consideration of the facts and circumstances in the present case do not indicate that Petitioner would have filed a notice of appeal but for his belief that the time to appeal had run. Therefore, Petitioner has not shown the requisite prejudice that would entitle him to relief on his claim of ineffective assistance.

Petitioner's contention that he did not pursue an appeal because he thought the time had run is belied by the testimony of Ayers and Petitioner's own correspondence to Ayers. All the correspondence from Petitioner to Ayers indicated that Petitioner was pursuing a Rule 35 motion in lieu of filing an appeal. Importantly, Ayers testified that had Petitioner directed him to file an appeal *at any time* he would have done so. This testimony is supported by the fact that, although Ayers incorrectly believed that the time to appeal had run when it had not, he repeatedly told Petitioner that he should notify him immediately if he desired to file an appeal. The record also evidences that after Petitioner's family members expressed his interest in appeal, Ayers and Petitioner discussed whether to change strategy and appeal and Petitioner decided to continue

9

pursuit of a Rule 35 motion. Finally, the fact that Petitioner pled guilty and signed an appeal waiver further indicates that he did not plan to pursue an appeal of his sentence. Accordingly, the Court gives no weight to Petitioner's unsupported testimony that he would have appealed but for the fact that he thought the time had run and concludes that counsel's error in calculating the appeal time was not ineffective assistance of counsel.

In summary, it is the Court's opinion that Petitioner's counsel informed him of his appeal rights, that Petitioner never instructed his counsel to file an appeal, and that the error in calculating Petitioner's appeal time was not ineffective assistance of counsel. The facts and circumstances of this case, including Petitioner's plea, the appeal waiver, and the post sentence conduct, do not support an ineffective assistance of counsel claim based on failure to timely notice an appeal.

## CONCLUSION

The undersigned **RECOMMENDS** that the Petitioner's 28 U.S.C. § 2255 claim for ineffective assistance of counsel based on a failure to timely file an appeal be **DISMISSED**.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days after receiving it to file written objections. Failure to file timely written objections bars or may bar an aggrieved party from receiving a *de novo* review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the District Court.

This the 16th day of February, 2011.

_____
DAVID W. DANIEL
UNITED STATES MAGISTRATE JUDGE

11